UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA CARMONA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:15-cv-00752-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Plaintiff Alicia Carmona ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

## FACTS AND PRIOR PROCEEDINGS

On October 20, 2009, Plaintiff filed an application for disability insurance benefits. AR 267-70.[1] Plaintiff alleged that she became disabled on June 22, 2007, due to her right shoulder and neck. AR 291. Plaintiff's application was denied initially and on reconsideration. AR 111-14, 116-20. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Christopher Larsen held a hearing on April 11, 2011, and issued an order denying benefits on April 28, 2011. AR 36-57, 69-82. Plaintiff sought review of the ALJ's decision by the Appeals Council. On June 25, 2012, the Appeals Counsel granted the request for review and remanded the case to an ALJ for resolution. AR 86-89. Following remand, ALJ Christopher Larsen held a hearing on June 24, 2013, and issued an order denying benefits on July 18, 2013. AR 10-35, 91-106. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-7, 9. This appeal followed.

**Hearing Testimony**

April 11, 2011

The ALJ initially held a hearing on April 11, 2011, in Fresno, California. AR 36-57. Plaintiff appeared and testified. She was represented by counsel, Robert Decker Christenson. Impartial Vocational Expert ("VE") Cheryl R. Chandler and an interpreter, Ms. Munoz, also appeared. AR 38-39.

At the outset of the hearing, Plaintiff's counsel asked in English for Plaintiff's birthdate. Plaintiff responded, without the benefit of an interpreter, "12/10/64." She also stated her age as 46. AR 39-40. Subsequently, when questioned by the ALJ, Plaintiff indicated that she wanted to use an interpreter. AR 40.

When counsel resumed questioning, Plaintiff testified with an interpreter that she completed the sixth grade in Mexico. She can understand some spoken English language and can read and write English "a little bit." She can write a note to someone in English for simple things, but she cannot read a newspaper in English. AR 41.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about her work in the last fifteen years, Plaintiff testified that she worked in a packing house, packing lemons all year long, but they let her go. She would make cardboard boxes, put them up, and the lemons would land in the boxes. She did not really lift or carry anything, but she sometimes had to sort lemons and do some cleaning. She was on her feet most of the time. The heaviest thing she lifted was a bucket of water, weighing about 20 pounds. AR 42-43.

When asked why she is not able to work, Plaintiff testified that she hurt her right arm, neck and upper back. She has headaches, which now affect her left arm. She was injured in November 2004, but worked until 2007. There was a period of about a year in which she could only work four hours a day per doctor's orders. Plaintiff testified that she lost her work in 2007 because she could only work four hours. AR 43-45.

Plaintiff also testified that Dr. Ybarra, a chiropractor, had been treating her since 2007 with massages in her upper back and neck. He also does other therapy with a machine down toward her waist. Plaintiff reported that she started to see Dr. Ybarra on her own because the insurance doctor said she was fine, but she was not. In addition to seeing Dr. Ybarra, Plaintiff also takes Advil for pain and a cold cream. AR 45-46.

In response to questions about her abilities, Plaintiff testified that she is left-handed and can lift and carry five pounds. She does not have any problem standing or sitting, but she cannot lift her arm and has to use her left hand. To wash her hair, she uses both hands. She sometimes drops things, but not that often. She has to lie down about twice in an eight-hour day for one to one and a half hours because she does not sleep well at night. She can walk about 45 minutes. In a normal week, she probably has three bad days. She can stand for about three hours and sit about three hours before she needs to lie down or do something else. In an eight-hour day, she could stand three or four hours and sit about three or four hours because of pain in her lower back. AR 46-48.

Plaintiff also testified that she has headaches about three times a week, lasting about an hour. When her arm hurts a lot, it causes a headache. When she has headaches, she cannot do anything. AR 48-49.

When questioned about her daily activities, Plaintiff testified that she does a little bit of housework, lies down and, when she has to, goes to the store.  She can dress herself depending on what she wears.  AR 49-50.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Cheryl R. Chandler.  The VE testified that Plaintiff's past relevant work was identified as packer/sorter.  For the first hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience who could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk about four hours in an eight-hour day and can sit about four hours in an eight hour day, could occasionally climb, balance, stoop, kneel, crouch and crawl and could occasionally reach overhead.  The VE testified that this hypothetical worker could not perform Plaintiff's past relevant work, but there were other jobs in the economy that she could perform, reduced 50 percent, such as assembly, material handlers and hand packers.  AR 52-54.

For the second hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience who could lift and carry ten pounds occasionally, less than ten pounds frequently, could stand and walk a total of less than two hours and sit a total of less than two hours.  The VE testified that there would be no past relevant work or any other work.  AR 54-55.

For the third hypothetical, Plaintiff's counsel asked the VE to assume a person of Plaintiff's age, education and work experience who would need to take two unscheduled rest breaks of one hour to one hour and a half.  The VE testified that there would be no work for this person.  AR 54-55.

June 24, 2013

Following remand, on June 24, 2013, the ALJ held a hearing in Fresno, California.  Plaintiff appeared with her attorney, Lars A. Christenson.  Impartial Vocational Expert ("VE") Judith L. Najarian and an interpreter, Ms. Munoz, also appeared.  AR 12, 14.

When asked about her ability to speak English, Plaintiff testified that when she was going to school, she could still remember, but because she was not going to school, she had "forgotten a lot."  AR 14-15.  Plaintiff believed that she already had stopped going to school by the time of the last hearing.  She had two years of instruction in English, but she cannot read a newspaper in English and cannot follow or understand television programs or radio broadcasts in English.  She does not have

any friends or family members with whom she speaks primarily English. When shopping at stores or ordering meals in restaurants, she asks if they speak Spanish. AR 15-16.

In response to questions from her attorney, Plaintiff testified that she was 48 years old and had completed the sixth grade in Mexico. She is right handed. She last worked making cardboard boxes by hand at Clean Citrus. She was there for 12 years and stopped working in 2007. AR 17-18. Plaintiff reported that she stopped working in 2007 because they wanted a person that could work full-time. Her doctor had told her that she could no longer work full-time, and she had been working only four hours a day for about a year. AR 18-19.

Plaintiff explained that she injured her right arm in November 2004. She went to a doctor and they sent her back to work with a lighter job. In the beginning, she worked the lighter job eight hours until she went to see Dr. Ybarra, who told her that she should not be working as much. She is not still seeing Dr. Ybarra. Plaintiff now sees Dr. Rucker, who puts something warm on her neck and gives her medications. She takes Ibuprofen, tramadol and Soma for pain and to relax the muscles. Her medications sometimes cause her to feel drowsy or have headaches and dizziness. She has headaches every day and lies down for about an hour and a half to get rid of them. She also takes two naps a day for an hour to an hour and a half. AR 19-22.

In response to questions about her right arm, Plaintiff testified that she is almost not able to lift things. She can lift an item that is three pounds with her right arm. She can lift a little bit more with her left arm. When she picks things up with her right arm, she has to put them down right away because it hurts. She does not have a hard time holding onto things with her hands, but has problems twisting things. AR 22-24.

Plaintiff also testified that she can sit about three hours and stand about three hours in an eight-hour workday. If she uses both hands, she can lift a gallon of milk. If she wants to do something with her hair, like straighten it or curl it, she has to have help. During a typical day, she makes breakfast, does a little bit of cleaning, sits and rests and takes her medications. She also goes to the market. AR 24-26.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE"), Judith L. Najarian. The VE testified that Plaintiff's past work included cleaner-industrial,

bender, sorter-agricultural produce and packer-agricultural produce. AR 27-28. For the first hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience who could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk four hours in an eight-hour day and could sit four hours in an eight-hour day and could occasionally climb, balance, stoop, kneel, crouch, crawl and reach overhead. The VE testified that this worker could not perform any of Plaintiff's past jobs or any other work. AR 28-31. The VE further testified that if there was sufficient English to be able to converse, then there would be light jobs with a sit/stand option available, such as cashier II, eroded by 90 percent, light delivery, and bench assembler, reduced by 90 percent. AR 32-33. Plaintiff confirmed that she knows how to drive and has a California driver's license. AR 33.

For the next hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience who could lift and carry less than ten pounds, could stand and walk about three hours in an eight-hour day and could sit about three hours in an eight-day with additional limitations. The VE testified that there would be no jobs for that worker. AR 33-34.

For the next hypothetical, Plaintiff's attorney asked the VE to assume a person that would have to take two unscheduled work breaks lasting up to three hours in total. The VE testified that there would not be any work for this person. AR 34.

**Medical Record**

The entire medical record was reviewed by the Court. AR 334-489. The relevant medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Following remand, and using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 91-106. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from her alleged onset date of June 22, 2007, through her date last insured of December 31, 2012. AR 99. Further, the ALJ identified that Plaintiff had the severe impairment of status post on-the-job neck injury. Nonetheless, the ALJ determined that the severity of Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 99-100. Based on his review of the entire record, the ALJ

determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 4 hours and sit 4 hours in an eight-hour workday. She could occasionally climb, balance, stoop, kneel, crouch, crawl and reach overhead. She also could speak some English. AR 100-104. The ALJ found that through the date last insured, Plaintiff could not perform her past relevant work, but there were other jobs that she could perform in the national economy. AR 104-05. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act at any time from June 22, 2007, her alleged onset date, through December 31, 2012, the date last insured. AR 105.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff argues that the ALJ erred by (1) determining at step five that she had the English-language ability to perform other work existing in the national economy; and (2) failing to articulate sufficient reasons for rejecting her credibility.

## DISCUSSION[2]

### A. Step Five of the Sequential Evaluation

At step five of the sequential evaluation, the ALJ opined that Plaintiff retained the RFC to perform representative occupations, such as Cashier II, Light Deliverer and Bench Assembler. AR 105; DICOT 211.462-010 (G.P.O.), 1991 WL 671840; DICOT 230.663-010 (G.P.O.), 1991 WL 672160; DICOT 706.684-042 (G.P.O.), 1991 WL 679055. In reaching this conclusion, the ALJ heard testimony from VE Judith Najarian. AR 27-34. During the course of testimony, the ALJ asked the VE a hypothetical question assuming whether a person of Plaintiff's age, education, and experience with her physical RFC and sufficient English to be able to converse could perform work as it exists in the national economy. The VE testified that a worker with Plaintiff's RFC and sufficient English to be able to converse could perform the work of cashier II, light delivery, and bench assembler. AR 32-33; DICOT 211.462-010 (G.P.O.), 1991 WL 671840; DICOT 230.663-010 (G.P.O.), 1991 WL 672160; DICOT 706.684-042 (G.P.O.), 1991 WL 679055. The VE eroded the job numbers for cashier II and bench assembler to accommodate Plaintiff's language ability. AR 32-33.

Plaintiff forwards two challenges to the ALJ's step five analysis. First, Plaintiff asserts that the VE eroded available jobs to account for a sit/stand option, not because of Plaintiff's limited language ability. (Doc. 13 at p. 9). Second, Plaintiff asserts that the ALJ erred in finding that she could perform

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

the representative occupations of cashier II, light deliverer and bench assembler. In particular, Plaintiff argues that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") because the jobs of cashier II, light deliverer and bench assembler require Level 2 language, which exceeds her English language abilities.[3] (Doc. 13 at pp. 12-13).

With respect to the first challenge, Plaintiff postulates that the VE eroded available jobs due to Plaintiff's standing, walking and sitting restrictions, not her limited ability to speak English. (Doc. 13 at p. 9). The record suggests, however, that the VE eroded the available jobs due to Plaintiff's limited English language ability. At the hearing, the ALJ and VE engaged in the following exchange:

```
A     -- because the typical jobs that I would pick with a sit/stand option require
      English, a cashier, for example or a --
Q     Yes.
A     -- storage rental, for example, or a delivery person, for example, whatever, there's
      English. So I would then look to sedentary jobs where there is sitting half time --
Q     Okay.
A     -- where they could stand up half the day basically --
Q     Yes.
A     -- and bend over and continue to work, but now we're --
Q     Yes.
A     -- standing up and bending –
Q     -- Yes.
A     -- half the day and we only have bending up to a third of a day --
Q     Yes.
A     -- occasional.
Q     Yes.
A     That's not a match.
Q     So it's not going to happen?
A     So I'm going to say no work and that's my rationale –
Q     Okay.
A     -- in case you have to refer to it.
Q     All right. If we assume some limited facility in English, an ability to deal with the
      public on kind of a routine basis --
A     Okay.
Q     --we would, I presume, get a different answer, then there would be light jobs with
      a sit/stand option?
A     If there was sufficient English to be able to converse --
Q     Yes.
A     --as a cashier might or as a storage rental clerk might --
Q     Yes.
```

---

[3] Plaintiff does not argue that she is illiterate. Rather, Plaintiff contends that her "ability to speak English is consistent with Language Level of 1, at best." (Doc. 13 at p. 12).

9

|   |   |   |
|---|---|---|
| 1 | A | -- or someone who is doing some light delivery, they're sitting and standing back and forth -- |
| 2 | Q | Yes. |
|   | A | -- but you have to have some conversation.  It's not -- |
| 3 | Q | Yeah. |
| 4 | A | Yeah. |
|   | Q | Okay.  Well, if we assumed that -- |
| 5 | A | Oh, okay. |
|   | Q | -- can you just give me some -- |
| 6 | A | Yes. |
| 7 | Q | -- examples? |
|   | A | Oh, yes.  Okay, cashier II -- |
| 8 | Q | All right. |

          A       -- that would be 211.462-010, light, SVP 2 and I'm taking out 90 percent, leaving
          in 10, 12,2978 California and about nine times that in the United States.  Some light
          delivery, that presumes being able to drive, though.
          Q       Yes.
          A       I didn't hear in questioning whether there was a driver's license.
          Q       No, I didn't ask that.
          A       But if one had one --
          Q       Yeah.
          A       -- then 230.633, light, SVP 2, 15,468 California and, again, about nine times that
          in the United States.  And a third one, I'm going to go with a bench assembler, 706.684-
          042, light, SVP 2 and I'm going to reduce, again, the same thing, taking out about 90
          percent and leaving in 10, 2,149 in California.

AR 31-33. Based on this record of the VE's testimony, it was reasonable for the ALJ to conclude that the reduction in jobs was due to Plaintiff's limited language ability.  Moreover, even "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

With respect to Plaintiff's second challenge, Plaintiff contends that because she can only speak English consistent with Language Level 1 she does not have the requisite ability to perform the work of cashier II, light deliverer and bench assembler.  (Doc. 13 at p. 12). According to Plaintiff, the DOT defines the jobs of cashier II, light deliverer and bench assembler as requiring an individual to have the ability of Language Level 2.  (Doc. 13 at p. 10); DICOT 211.462-010 (G.P.O.), 1991 WL 671840; DICOT 230.663-010 (G.P.O.), 1991 WL 672160; DICOT 706.684-042 (G.P.O.), 1991 WL 679055. The DOT defines Language Level 2 as having a "[p]assive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar

1 words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model
2 cars and airplanes." *Id.*

3       In response, the Commissioner does not dispute that the DOT classifications for the
4 representative occupations require Language Level 2. The Commissioner also does not dispute that
5 Language Level 2 is in excess of Plaintiff's basic ability to communicate in English. Instead, the
6 Commissioner contends that the VE's testimony "adequately addressed any departure from the DOT
7 classifications regarding Plaintiff's language ability through a significant reduction in the number of
8 available jobs." (Doc. 14 at p. 9).

9       At step five, the burden shifts to the Commissioner to show that there is other work that exists
10 in the national economy that the claimant is able to perform. *Lounsburry v. Barnhart*, 468 F.3d 1111,
11 1114 (9th Cir. 2006). In determining whether such jobs exist, the ALJ will generally consult the DOT
12 and use the services of a vocational expert. *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir.
13 1997); 20 C.F.R. § 404.1566(d) and (e). An ALJ cannot rely on the VE's testimony without inquiring
14 whether it conflicts with the DOT and obtaining a reasonable explanation for any apparent conflict.
15 *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Evidence that is sufficient to permit a
16 deviation from the DOT may be a specific finding of fact as to the claimant's residual functional
17 capacity or inferences that can be drawn from the context of the VE's testimony. *Light*, 119 F.3d at
18 793.

19       Here, the VE initially testified that the typical jobs she would pick with a sit/stand option
20 require English, such as cashier or delivery person, but no such jobs would be available in the national
21 economy. AR 31. Only after the ALJ provided a hypothetical question that included a limitation to
22 "sufficient English to be able to converse," did the VE testify that there were other jobs available in
23 the national economy with an erosion of the occupational base by 90% for the cashier II and bench
24 assembler jobs. AR 32-33. The logical inference is that the VE's erosion eliminated those jobs that
25 would require Plaintiff to speak, read or write beyond a basic English level. *See Tommasetti v. Astrue*,
26 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ is entitled to make logical inferences from
27 the evidence). Thus, a reasonable explanation exists in the record to accommodate any inconsistency
28 between the VE's testimony and the DOT. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)

1  ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the
2  ALJ's findings if they are supported by inferences reasonably drawn from the record"); *Smith v.*
3  *Colvin*, No. EDCV 15-01916-KES, 2016 WL 3456906, at *2 (C.D. Cal. 2016) (even if DOT
4  inconsistency existed, VE sufficiently stated claimant could perform certain jobs); *see also Bayliss v.*
5  *Barnhart*, 427 F.3d 1211 (9th Cir. 2005) ("an ALJ may take administrative notice of any reliable job
6  information, including information provided by a VE" because the "VE's recognized expertise
7  provides the necessary foundation for his or her testimony" and "no additional foundation is
8  required").

9  For the above reasons, the VE properly found that Plaintiff could perform the cashier II and
10 bench assembler positions even in light of her English language abilities. On this record, the reliance
11 by the ALJ on the vocational expert's testimony was proper.

12 **B. Credibility**

13 Plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting her
14 credibility. (Doc. 13 at pp. 13-18). The Court disagrees.

15 In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage
16 in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).
17 First, the claimant must produce objective medical evidence of her impairment that could reasonably
18 be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the
19 first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony
20 regarding the severity of her symptoms only if he makes specific findings and provides clear and
21 convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what
22 evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086
23 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not
24 credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported
25 by substantial evidence."). Factors an ALJ may consider include: (1) the claimant's reputation for
26 truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or
27 inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3)
28 the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ provided several reasons for rejecting Plaintiff's subjective complaints including Plaintiff's inconsistent testimony regarding her ability to speak English, her conservative treatment, the objective medical evidence and her daily activities. AR 103-04. The Court finds that these factors are clear and convincing reasons to reject Plaintiff's credibility.

First, the ALJ discounted Plaintiff's credibility because she provided inconsistent testimony regarding her English language abilities. AR 104. An ALJ properly may consider inconsistencies in a claimant's testimony when evaluating credibility. *Smolen*, 80 F.3d at 1284; *see also Vidal v. Colvin*, No. CV 14-416-SP; 2015 WL 2249990, at *9 (C.D. Cal. May 12, 2015) (affirming Commissioner's decision where ALJ discounted plaintiff's credibility, in part, on the basis that she made inconsistent statements about her English language abilities); *Arellano v. Colvin*, No. CV 13-6750 JC, 2014 WL 1092836, at *5 (C.D. Cal. Mar. 18, 2014) (ALJ properly discredited plaintiff's subjective complaints due to internal conflicts within plaintiff's own statements and testimony, including statements regarding her English language abilities). In this instance, the ALJ correctly noted that Plaintiff made inconsistent statements about her English language abilities. At the first hearing, Plaintiff demonstrated knowledge of the English language by ignoring the translator and answering, in English, her attorney's questions, also posed in English. AR 39-40, 100, 104. Additionally, Plaintiff admitted that she could understand some English as well as read and write a little in English. AR 41, 104. In contrast, at the second hearing, Plaintiff spoke no English and testified that she had forgotten all the English she ever knew. This testimony was given despite Plaintiff's admission that she took two years of English in school and her previous ability to speak English. AR 15-16, 39-40, 101, 104. Given the discrepancies in Plaintiff's hearing testimony, there is substantial evidence supporting the ALJ's finding that Plaintiff made inconsistent statements about her English language abilities.

Second, the ALJ discounted Plaintiff's allegations because her treatment was conservative. AR 102-03. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). Here, the ALJ considered a history of conservative treatment, which included chiropractic treatment, manual manipulation, electronic stimulation, massage and medications. AR 102-03. *See, e.g.*, *Palomo v. Colvin*, No. CV 14-3547 JC, 2014 WL 4929040, at *8 (C.D. Cal. Oct. 1, 2014) (ALJ

properly discounted claimant's credibility where claimant received conservative treatment including medication, hot packs, ultrasound, spinal manipulation, and electrical stimulation). The ALJ's determination that Plaintiff's treatment was conservative is supported by substantial evidence in the record. AR 370, 373, 376, 379, 382, 385, 388, 391, 415, 418, 421, 433, 435, 439, 441, 445, 447, 449, 451, 455 (chiropractic or manual manipulation, massage, e-stim); 399 (chiropractic care reserved for exacerbations/flare-ups), 428 (care provided for intermittent exacerbation-chiropractic and medication); 462-64 (medications); 465, 483, 485 (hot pack and IM injection); 466, 484, 486 (medications).

Third, the ALJ found that Plaintiff's daily activities were not consistent with her allegations of disabling impairments. AR 104. An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"). Here, the ALJ considered Plaintiff's reported activities, including attending adult school, driving, shopping, preparing meals, performing household chores, tying or untying and removing shoes and socks using both hands, standing and walking for 4 hours a day and sitting about 4 hours a day. AR 48, 104, 298, 361-62. The ALJ reasonably found that these daily activities were inconsistent with her allegations of disabling symptoms and limitations. *See Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for rejecting claimant's credibility); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's ability to perform various household chores such as cooking, laundry, washing dishes and shopping, among other factors, bolstered "the ALJ's negative conclusions about [her] veracity").

Plaintiff argues that her ability to participate in basic human function is not determinative of disability. (Doc. 13 at p. 18). While a claimant does not need to be utterly incapacitated, "[e]ngaging in daily activities that are incompatible with the severity of the symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Further,

1 because the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence it
2 is not Court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

3 Fourth, the ALJ considered the lack of objective evidence to support her allegations of
4 disabling limitations. AR 101-03.  An ALJ is entitled to consider whether there is a lack of medical
5 evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for
6 discounting a claimant's credibility.  *Burch*, 400 F.3d 680–81; *Batson*, 359 F.3d at 1196-97 (ALJ
7 properly relied on objective medical evidence and medical opinions in determining credibility); *see
8 also Parra*, 481 F.3d at 750 (ALJ reasonably found complaints of disabling knee pain not credible in
9 light of lab tests showing knee function within normal limits).  Here, the ALJ relied on objective
10 evidence after her November 2004 injury, noting that in March 2005 she was discharged from further
11 care with regular work duty status.  AR 28, 101.  The ALJ also relied on evidence from the
12 consultative examination in 2009 demonstrating that Plaintiff's range of motion testing was normal,
13 motor strength was 5/5 and she had normal muscle bulk and tone.  AR 101-02, 360-64.  Additionally,
14 the ALJ relied, in part, on objective evidence demonstrating that Plaintiff only had intermittent,
15 moderate, dull/achy neck and right arm pain in 2011 and 2012.  AR 427, 433, 435, 439, 441, 445, 447,
16 449, 451, 455.  The ALJ further noted that in 2013, Dr. Mylene Rucker documented a normal back
17 examination with some tenderness in the neck and limitations to her right shoulder range of motion.
18 AR 103, 484.

19 As a final matter, the ALJ also discounted Plaintiff's credibility because of her non-compliance
20 with medications.  The ALJ found that in 2013, Plaintiff reported severe pain after not taking her
21 medications for 3 days.  Plaintiff noted that taking medications as directed helped her.  AR 103, 464.
22 An unexplained, or inadequately explained, failure to follow a prescribed course of treatment may cast
23 doubt on the sincerity of the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).
24 Plaintiff argues, however, that the ALJ erred by citing only this one instance, contending that the
25 record demonstrated that Plaintiff was out of medication at that time.   (Doc. 13 at p. 17).  The Court
26 agrees that the ALJ's reliance on a single treatment record does not constitute substantial evidence
27 demonstrating that Plaintiff was non-compliant with her prescribed course of treatment.  Therefore,
28 Plaintiff's non-compliance with treatment is not a clear and convincing reason for discrediting her

testimony.  Although this reason may have been in error, the ALJ's credibility determination will not be disturbed because there is substantial evidence to support the ALJ's other conclusions.  *See, e.g., Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error).  Moreover, it was not error to suggest that Plaintiff's symptoms could be controlled by medications given Plaintiff's own statement that taking her medications as directed helped her.  AR 103, 464.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Alicia Carmona.

IT IS SO ORDERED.

Dated:   **September 29, 2016**           /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE